UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

JULIE A. FORD,

    Plaintiff,

v.                                                 Case No.: 3:24-cv-128-DNF

COMMISSIONER FOR SOCIAL
SECURITY,

    Defendant.
_____

**OPINION AND ORDER**

Plaintiff Julie A. Ford seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying her claim for a period of disability and disability insurance benefits. The Commissioner filed the Transcript of the proceedings ("Tr." followed by the appropriate page number), and the parties filed legal memoranda setting forth their positions. As explained below, the decision of the Commissioner **AFFIRMED** under § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

**I.    Social Security Act Eligibility, Standard of Review, Procedural History, and the ALJ's Decision**

    **A.    Social Security Eligibility**

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can

be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). The impairment must be severe, making the claimant unable to do her previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505–404.1511, 416.905–416.911.

### B. Standard of Review

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion. Even if the evidence preponderated against the Commissioner's findings, we must affirm if the decision reached is supported by substantial evidence." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). In conducting this review, this Court may not reweigh the evidence or substitute its judgment for that of the ALJ, but must consider the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citation omitted); *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). Unlike findings of fact, the Commissioner's conclusions of law are not presumed valid and are reviewed under a de novo

standard. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994); *Maldonado v. Comm'r of Soc. Sec.*, No. 20-14331, 2021 WL 2838362, at *2 (11th Cir. July 8, 2021); *Martin*, 894 F.2d at 1529. "The [Commissioner's] failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." *Keeton*, 21 F.3d at 1066.

The ALJ must follow five steps in evaluating a claim of disability. 20 C.F.R. §§ 404.1520, 416.920. At the first step, the ALJ must determine whether the claimant is currently engaged in substantial gainful employment. 20 C.F.R. § 404.1520(a)(4)(i), (b); 20 C.F.R. § 416.920(a)(4)(i), (b). At step two, the ALJ must determine whether the impairment or combination of impairments from which the claimant allegedly suffers is "severe." 20 C.F.R. § 404.1520(a)(4)(ii), (c); 20 C.F.R. § 416.920(a)(4)(ii), (c). At step three, the ALJ must decide whether the claimant's severe impairments meet or medically equal a listed impairment. 20 C.F.R. § 404.1520(a)(4)(iii), (d); 20 C.F.R. § 416.920(a)(4)(iii), (d). If the ALJ finds the claimant's severe impairments do not meet or medically equal a listed impairment, then the ALJ must determine whether the claimant has the residual functional capacity ("RFC") to perform her past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv), (e)–(f); 20 C.F.R. § 416.920(a)(4)(iv), (e)–(f).

If the claimant cannot perform past relevant work, the ALJ must determine at step five whether the claimant's RFC permits her to perform other work that exists in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), (g), 416.920(a)(4)(v), (g). At the fifth step, there are two ways in which the ALJ may establish whether the claimant is capable of performing other work available in the national economy. The first is by applying the Medical Vocational Guidelines, and the second is by the use of a vocational expert. *Phillips v. Barnhart*, 357 F.3d 1232, 1239-40 (11th Cir. 2004); *Atha v. Comm'r, Soc. Sec. Admin.*, 616 F. App'x 931, 933 (11th Cir. 2015).

The claimant bears the burden of proof through step four. *Atha*, 616 F. App'x at 933. If the claimant meets this burden, then the burden temporarily shifts to the Commissioner to establish the fifth step. *Id.*; 20 C.F.R. § 404.1520(a)(4)(v), (g); 20 C.F.R. § 416.920(a)(4)(v), (g). If the Commissioner presents evidence of other work that exists in significant numbers in the national economy that the claimant is able to perform, only then does the burden shift back to the claimant to prove she is unable to perform these jobs. *Atha*, 616 F. App'x at 993.

### C. Procedural History

Plaintiff applied for a period of disability and disability insurance benefits on July 27, 2013, alleging disability beginning on December 16, 2010. (Tr. 97, 313-14). The application was denied initially and on reconsideration. (Tr. 97, 107). Plaintiff requested a hearing, and on October 20, 2015, a hearing was held before

Administrative Law Judge Laureen Penn ("ALJ"). (Tr. 1081-1102). On April 8, 2016, the ALJ entered an amended decision, finding Plaintiff not under a disability from December 16, 2010, the alleged onset date, through September 30, 2013, the date last insured. (Tr.139-49). On March 9, 2017, the Appeals Council remanded the case to an administrative law judge, finding that Plaintiff's date last insured was September 30, 2015, not September 30, 2013. (Tr. 156-57). The Appeals Council found reconsideration of the full period was warranted, and directed the administrative law judge to: (1) offer Plaintiff an opportunity for a hearing; (2) take any further action needed to complete the administrative record; and (3) issue a new decision. (Tr. 156-57).

On remand, the ALJ held another hearing on July 27, 2023. (Tr. 44-71).[1] On August 7, 2023, the ALJ issued a decision, finding Plaintiff not under a disability from December 16, 2010, through September 30, 2015. (Tr. 36). Plaintiff requested review of the decision, but the Appeals Council denied Plaintiff's request on December 6, 2023. (Tr. 1-6). Plaintiff filed a Complaint (Doc. 1) on February 5, 2024, and the case is ripe for review. The parties consented to proceed before a United States Magistrate Judge for all proceedings. (Doc. 1).

---

[1] At the hearing, Plaintiff's counsel asked the ALJ why the case was so delayed. (Tr. 50). Counsel recounted that Plaintiff had a hearing in 2016, her case was remanded from the Appeals Council in 2017, but it took six and a half years to schedule a subsequent hearing. (Tr. 50). The ALJ did not know why this case was so delayed. The Court finds this unaccountable delay with no legitimate explanation very troublesome. Unfortunately, there seems to be no accountability for inexcusable delays when situations like this arise.

### D. Summary of ALJ's Decision

In this matter, the ALJ found Plaintiff met the insured status requirements of the Social Security Act through September 30, 2015. (Tr. 20). At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity from December 16, 2010, the alleged onset date, through her date last insured of September 30, 2015. (Tr. 20). At step two, the ALJ found that through the date last insured, Plaintiff had the following severe impairments: "seizure disorder, chronic pain syndrome, migraines, tremors, bipolar disorder, and anxiety disorder." (Tr. 21). At step three, the ALJ found that through the date last insured, Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526). (Tr. 21).

Before proceeding to step four, the ALJ found that through the date last insured, Plaintiff had the following RFC:

> After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 [C.F.R. §] 404.1567(b) except the claimant can lift and carry 20 pounds occasionally and 10 pounds frequently, and can stand and walk for 6 hours and can sit for 6 hours. The claimant can occasionally balance and can frequently climb stairs and ramps, stoop, crouch, kneel and crawl, but cannot climb ladders, ropes, or scaffolds. The claimant cannot have exposure to hazards, including unprotected heights and moving machinery, and cannot drive

>or operate heavy machinery. The claimant can frequently finger and handle bilaterally. The claimant can understand, remember, and carry out simple instructions and can make decisions for simple work-related matters. The claimant can occasionally interact with supervisors, coworkers and the public. The claimant can sustain attention and concentration for periods of two hours at a time, but cannot perform work requiring production rate pace, hourly quota type work, or fast paced assembly line work.

(Tr. 24).

At step four, the ALJ determined that through the date last insured, Plaintiff was unable to perform past relevant work as an office manager, office clerk, and personnel manager. (Tr. 34-35). At step five, the ALJ found that considering Plaintiff's age (53 years old on the date last insured), education (at least high school), work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could have performed. (Tr. 35). Specifically, the vocational expert testified that a person with Plaintiff's limitations could have performed such occupations as:

(1) Housekeeping cleaner, DOT[2] 323.687-014, light, unskilled, SVP 2

(2) Office helper, DOT 239.567-010, light, unskilled, SVP 2

(3) Final inspector, DOT 727.687-054, light, unskilled, SVP 2

(4) Sorter, DOT 573.687-034, light, unskilled, SVP 2

(5) Assembler, small products, DOT 706-684.022, light, unskilled, SVP 2

---

[2] DOT refers to the *Dictionary of Occupational Titles*.

(Tr. 36). The ALJ concluded that Plaintiff had not been under a disability from December 16, 2010, through September 30, 2015. (Tr. 36).

## II. Analysis

On appeal, Plaintiff broadly challenges the ALJ's finding that she had the RFC to perform light work. (Doc. 15, p. 1, 4). Specifically, Plaintiff argues that substantial evidence does not support the ALJ affording no weight to the opinion of psychiatrist Michael Marchese, M.D. (Doc. 15, p. 5). Plaintiff claims that this error led to an improper finding in the RFC assessment that Plaintiff could perform light work.

In this case, Plaintiff applied for disability benefits on July 27, 2013. (Tr. 97). For disability cases filed before March 27, 2017 – such as this one – at step four, an ALJ must properly consider treating physicians, examining physicians, non-examining physician, and other source opinions, and weigh these opinions and findings as an integral part of the ALJ's RFC determination. *See Rosario v. Comm'r of Soc. Sec.*, 877 F. Supp. 2d 1254, 1265 (M.D. Fla. 2012). Whenever a physician offers an opinion about the nature and severity of a claimant's impairments—including the claimant's symptoms, diagnosis, and prognosis; physical and mental restrictions; or what the claimant can still do—the ALJ must state with particularity the weight given to the opinion and the reasons therefor. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178-79 (11th Cir. 2011). Without such an explanation, "it is impossible for a reviewing court to determine whether the ultimate decision

on the merits of the claim is rational and supported by substantial evidence." *Id.* (citing *Cowart*, 662 F.2d at 735).

The opinions of treating physicians are entitled to substantial or considerable weight unless good cause is shown to the contrary. *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004). The Eleventh Circuit has concluded that good cause exists when: (1) the treating physician's opinion was not bolstered by the evidence; (2) the evidence supported a contrary finding; or (3) the treating physician's opinion was conclusory or inconsistent with the doctor's own medical records. *Id.* "The ALJ is to consider a number of factors in determining how much weight to give to each medical opinion: (1) whether the doctor has examined the claimant; (2) the length, nature, and extent of a treating doctor's relationship with the claimant; (3) the medical evidence and explanation supporting the doctor's opinion; (4) how consistent the doctor's 'opinion is with the record as a whole'; and (5) the doctor's specialization." *Forsyth v. Comm'r of Soc. Sec.*, 503 F. App'x 892, 893 (11th Cir. 2013) (citing 20 C.F.R. §§ 404.1527(c), 416.927(c)).

For disability cases filed after March 27, 2017, new regulations apply and the ALJ no longer defers or gives any specific evidentiary weight to a medical opinion. See 20 C.F.R. § 404.1520c(a), 20 C.F.R. § 416.920c(a). Even though Plaintiff acknowledged that the ALJ gave "no weight" to Dr. Marchese's opinion, Plaintiff incorrectly analyzed the ALJ's findings under the new regulations, arguing that the

ALJ was required to assess the persuasiveness of a medical source's opinion. (Doc. 15, p. 5). Despite presenting arguments under the wrong regulations, the Court will apply Plaintiff's arguments under the correct regulations that were in effect at the time the application was filed.

The record contains treatment notes from Dr. Marchese from an initial evaluation in January 2015,[3] through July 2015, showing that he generally treated Plaintiff on a monthly basis. (Tr. 739-45). In the decision, the ALJ thoroughly summarized Dr. Marchese's treatment notes. (Tr. 30). In a March 2015 follow-up visit, Dr. Marchese observed that Plaintiff was dressed and groomed appropriately, speech decreased in rate, mood was generally euthymic but reactive, affect remained flat, thinking was minimally circumstantial, fund of knowledge was adequate, and had poor judgment and insight. (Tr. 30, 744). He diagnosed Plaintiff with depressive symptoms that had not improved. (Tr. 30, 744). Dr. Marchese continued Plaintiff on her current medication regimen, but lowered her Depakote amount. (Tr. 30, 744). In April and May 2015, Dr. Marchese observed similar findings except that Plaintiff's speech was fluent, and he assessed her with depressive symptoms that had partially improved. (Tr. 30, 742-43). In June 2015, Dr. Marchese observed that Plaintiff was agitated, her affect remained flat, she had decreased concentration, was forgetful–

---

[3] The legibility of Dr. Marchese's handwriting is difficult to decipher, but the date appears to be January 2015. (Tr. 745).

losing her train of thought, and her judgment and insight were poor. (Tr. 30, 741). He found her depressive symptoms had not improved. (Tr. 30, 741). Later in June, Dr. Marchese observed that Plaintiff was minimally disheveled, tearful, and had a dysphoric mood, constricted affect, and poor judgment and insight. (Tr. 30, 740). Finally, in July 2015, Dr. Marchese observed that Plaintiff's affect had improved and she was less depressed, but was still forgetful and lost her train of thought. He found her judgment and insight fair. (Tr. 30, 739).

On June 18, 2015, and October 5, 2015, Dr. Marchese completed Questionnaires as to Mental Residual Functional Capacity. (Tr. 697-700, 735-38). In both Questionnaires, Dr. Marchese checked boxes as to Plaintiff's abilities in various areas. (Tr. 697-700, 735-38). Plaintiff cites Dr. Marchese's findings in the category of sustained concentration or persistence. (Tr. 698, 736). Dr. Marchese found Plaintiff had marked limitations in: (1) "[e]stimated impairment of ability to perform and complete work tasks in a normal workday or week at a consistent pace"; and (2) "[e]stimated impairment of ability to perform at production levels expected by most employers." (Tr. 698, 736).

Throughout the decision, the ALJ referred to Dr. Marchese's treatment records mainly by exhibit number 19F rather than by his name. At step three, the ALJ referred to Dr. Marchese's treatment notes to support his findings that Plaintiff's mental impairments did not meet or medically equal a listing. (Tr. 21-24).

In assessing the RFC and at step four, the ALJ repeatedly referred to Dr. Marchese's treatment notes, about the helpfulness of her medications and in assessing the weight afforded other medical providers' opinions. (Tr. 27, 31-34). As stated above, the ALJ also thoroughly summarized Dr. Marchese's treatment notes. (Tr. 30).

The ALJ acknowledged that Dr. Marchese completed two mental residual functional capacity questionnaires in June and October 2015. (Tr. 33). In affording these opinions no weight, the ALJ found:

> The record also contains mental residual functional capacities completed by the claimant's treating psychiatrist, Dr. Marchese, in mid-June 2015 and early October 2015 (Exs. 16F; 18F). In June 2015, Dr. Marchese noted the claimant overall had mild to moderate limitation in social functioning, marked to extreme limitation in sustained concentration or persistence, and mild to marked limitation in adaptation (Ex. 16F/1-3). Dr. Marchese similarly opined in October 2015 (Ex. 18F/1-3). However, the provider did not cite to any objective findings, such as mental status examinations, or subjective evidence such as the claimant's reporting in these forms. Moreover, treatment notes are not consistent with any marked or extreme limitations (see Ex. 19F). As such, these forms are given no weight.

(Tr. 33).

Plaintiff argues that the ALJ's reasons for affording no weight to Dr. Marchese's opinion were inaccurate and contrary to the evidence of record. (Doc. 15, p. 8). Plaintiff contends that Dr. Marchese's objective and subjective findings in the treatment notes support his opinion that Plaintiff had: marked limitations in the ability to perform and complete work tasks in a normal work day or week at a

consistent pace; and in the ability to perform at production levels expected by most employees. (Doc. 15, p. 8). Plaintiff claims that Dr. Marchese's objective evidence supports his opinion, such as Plaintiff: being forgetful, losing train of thought; being tearful; having fluent but slow speech; having a constricted affect; having fair to poor judgment and insight; having a flat affect; having decreased concentration; and having minimally circumstantial thinking. (Doc. 15, p. 8).

Consistent with the ALJ findings, in both Questionnaires Dr. Marchese basically checked boxes and incorporated no explanations for his finding – including his marked findings – and cited no treatment notes in support of these findings. (Tr. 697-700;735-38). In addition, earlier in the decision, the ALJ thoroughly summarized and considered Dr. Marchese's treatment records, noting that at times Dr. Marchese found Plaintiff had normal as well as the abnormal symptoms. (Tr. 30). After consideration of these treatment records, the ALJ found that they were inconsistent with any marked or extreme limitations. (Tr. 33).

Good cause exists for the ALJ's finding that Dr. Marchese's opinion was not bolstered by his treatment notes and did not support the marked or extreme limitations in the questionnaires. Plus, the ALJ did not simply ignore Dr. Marchese's findings, but instead included limitations in the RFC to accommodate Plaintiff's impairments. After citing Dr. Marchese's treatment records as well as records from other providers, the ALJ determined:

> To accommodate the claimant's mental health impairments and related symptoms, the undersigned has further limited the claimant to simple instructions and simple decision-making, occasional interaction with others, and no work requiring production rate pace, hourly quota type work, or fast paced assembly line work, but finds no other mental limitations warranted by the relevant evidence of record.

(Tr. 34).

In essence, Plaintiff invites the Court to reweigh the evidence, which it cannot do. A court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner. *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014). "The ALJ need not refer to every piece of evidence in his decision, so long as a reviewing court can conclude that the ALJ considered the claimant's medical condition as a whole." *Id.* Even if the evidence preponderates against the Commissioner's decision, the Court must affirm if substantial evidence supports the Commissioner's decision. *Buckwalter v. Acting Comm'r of Soc. Sec.*, 5 F.4th 1315, 1320 (11th Cir. 2021). Taking the record as a whole, substantial evidence supports the ALJ's findings and the ALJ did not err in affording no weight to Dr. Marchese's opinion and in assessing the RFC.

### III. Conclusion

For the reasons discussed above, the Court finds that the decision of the Commissioner is supported by substantial evidence and the Commissioner applied the correct legal standard. The decision of the Commissioner is **AFFIRMED**. The

Clerk of Court is directed to enter judgment consistent with this opinion, terminate all deadlines, and close the case.

**DONE** and **ORDERED** in Fort Myers, Florida on December 23, 2024.

DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties